*Stone Key v. Monster*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of October, two thousand nineteen.

PRESENT:   PETER W. HALL,
           DEBRA ANN LIVINGSTON,
                 *Circuit Judges*,
           CLAIRE R. KELLY,
                 *Judge.**

───────────────────────────────────────

Stone Key Partners LLC, Stone Key Securities LLC,

> *Plaintiffs-Appellants*,

> v.                                           No. 18-2804-cv

Monster Worldwide, Inc.,

> *Defendant-Appellee*.

───────────────────────────────────────

For Appellants:                    CHARLES A. GILMAN, Cahill Gordon & Reindel LLP, New York, New York (Thomas D. Goldberg, Day Pitney LLP, Stamford, Connecticut and Howard Fetner, Day Pitney LLP, New Haven, Connecticut, *on the brief*)

***Judge Claire R. Kelly of the United States Court of International Trade, Sitting by Designation.

For Appellee:                    RYAN K. WALSH, Jones Day, Atlanta, Georgia
                                 (Harold K. Gordon, Jones Day, New York, New
                                 York, *on the brief*)

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiffs-Appellants Stone Key Partners LLC and Stone Key Securities LLC (collectively, "Stone Key") appeal the August 24, 2018 judgment and accompanying August 10, 2018 opinion and order of the district court granting judgment in favor of Defendant-Appellee Monster Worldwide, Inc. ("Monster") on each of Stone Key's three breach of contract claims following a three-day bench trial.   Stone Key also challenges the amount of reimbursement calculated by the district court for its out-of-pocket expenses incurred under the April 20, 2012 agreement ("the Engagement Letter") at issue in this litigation.   Stone Key, along with Bank of America Merrill Lynch, served as a co-financial advisor to Monster in connection with a strategic review focused principally on securing a potential acquiror for the company.   The Engagement Letter under which the parties memorialized their agreement provided that Stone Key was entitled to receive compensation from Monster in the event of certain qualifying transactions—including, as relevant here, a "Sale Transaction" or a "Partial Sale Transaction."   We assume the parties' familiarity with the underlying facts, the issues, and the procedural history of the case.   For many of the same reasons articulated by the district court, we affirm the grant of judgment in favor of Monster on all three breach of contract claims.   We also affirm the award of reimbursement to Stone Key in the amount of $37,267.50, plus prejudgment interest.

"In order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (applying New York law).   At issue here is whether Monster breached the Engagement Letter by failing to compensate Stone Key for certain transactions that Stone Key maintains fall within its scope.   The district court held that Stone Key was precluded from recovering on two of its three claims (for the "JobKorea II" and "Randstad" transactions) because those transactions occurred beyond the conclusion of the Engagement Letter's one-year tail period.   *See Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316 (S.D.N.Y. 2018).   The district court based its ruling on its finding that Stone Key's engagement ended on August 1, 2013, following the parties' failure to secure a potential acquiror for Monster as contemplated by the Engagement Letter and in light of their mutual understanding that the strategic review had, for that reason, reached its conclusion.   *See id.* at 327–32.

As a threshold matter, Stone Key asserts that the Engagement Letter unambiguously required written notice of termination and that, in the absence of either party having terminated the engagement via writing, the district court erred in looking to extrinsic evidence to ascertain the date on which Stone Key's engagement was completed.   "When reviewing a judgment following a bench trial in the district court, we review the court's findings of fact for clear error and its conclusions of law *de novo*."   *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 96 (2d Cir. 2010) (internal quotations

3

omitted)).  "Under New York law, 'if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence.'"  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (quoting *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005)).  "But if 'intent of the parties cannot be ascertained from the face of their agreement,' the contract is ambiguous and its interpretation presents a question of fact."  *Id.* (quoting *Postlewaite*, 411 F.3d at 67 (alterations omitted)).

We conclude that the Engagement Letter's termination provision is ambiguous, as it fails to identify an exclusive means for the engagement's conclusion.  While it establishes that Stone Key's "engagement hereunder may be terminated at any time by either Stone Key or [Monster] for any or no reason upon written notice thereof to the other party without liability or continuing obligation," App. 1396 § 6, it does not state that it "must" be terminated in writing.  *See, e.g.*, *New York State Elec. & Gas Corp. v. Aasen*, 550 N.Y.S.2d 223, 225 (3rd Dep't 1990) ("The word 'may' provides for a permissive and not a mandatory meaning within the context of the . . . agreement").  Nor does the Engagement Letter as a whole establish unambiguously that Stone Key's engagement is ongoing in the absence of such written termination.  *Cf., e.g.*, *Peter J. Solomon Co., L.P. v. ADC Prod. (UK) Ltd.*, No. 14-cv-4086, 2016 WL 1261136, at *2–4 (S.D.N.Y. Mar. 30, 2016) (rejecting proposition that agreement terminated automatically or that the parties rescinded their contract by abandonment where the agreement provided that the engagement term "shall extend from the date hereof and *shall continue thereafter* until (a) three months after such time as the Company or PJSC *shall have notified the other party in writing of the termination of this agreement* or" in the event of a notification of breach (emphasis added)).  Given the terms of

4

the Engagement Letter, the cases on which Stone Key relies for the proposition that the engagement could *only* be terminated by writing, *cf., e.g., id.; Chem. Bank v. Sepler*, 60 N.Y.2d 289, 293–94 (1983) (holding that change in parties' relationship did not terminate guarantee contract, which provided that it "shall remain in full force and effective irrespective of any interruptions in . . . business relations" but could be terminated via writing), are inapposite. Moreover, as the district court found, the Indemnification Provisions incorporated by reference in the Engagement Letter indicate that they shall survive "[t]he termination or modification of the Agreement, or the termination, modification or *completion* of the engagement of Stone Key thereunder," App. 1404, thus suggesting additional ways that the agreement might conclude.

Because the Engagement Letter did not condition termination of the agreement on written notice, the district court properly looked to extrinsic evidence to determine the parties' intent. The district court was entitled to look to "the parties' apparent intention, what would be commercially reasonable, and the parties' interpretation of the contract in practice, prior to litigation." *In re MPM Silicones, LLC*, 874 F.3d 787, 796–97 (2d Cir. 2017) (internal quotation marks and citations omitted). Its determination that these factors established that the agreement was complete by August 1, 2013, when Monster announced its stock repurchase program following the parties' failure to procure an acquiror, was not clearly erroneous. The district court cited ample evidence in support of its findings of fact while neglecting to credit the contrary testimony of Stone Key witness Michael Urfirer, which the court found self-serving. *See Stone Key*, 333 F. Supp. 3d at 331. Because "substantial evidence" supports Judge Furman's conclusions, thus invoking a "strong presumption in favor of [his] findings of fact," and the record does not otherwise support a "definite and firm conviction that a mistake has been committed,"

5

*Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010) (internal quotation marks and citation omitted), we decline to disturb these factual findings.

Stone Key also challenges the district court's ruling that Stone Key was not entitled to recover a fee for the December 2013 sale of 49.99% of Monster's interest in JobKorea, its Korean subsidiary, to H&Q Korea ("H&Q"), a private equity fund ("JobKorea I"). While the transaction fell within the engagement's one-year "tail period" as calculated by the district court, the court held that JobKorea I did not implicate "the sale of a material portion of the assets or operations of [Monster] and its subsidiaries taken as a whole" so as to constitute a Partial Sale Transaction under the agreement. *See* App. 1391 § 3(c); *Stone Key*, 333 F. Supp. 3d at 333–34. In the alternative, the district court held that the Partial Sale Transaction provision of the Engagement Letter was an unenforceable agreement. *Id.* at 334–36. We review these mixed questions of law and fact *de novo*. *See Beck Chevrolet Co. v. Gen. Motors LLC*, 787 F.3d 663, 672 (2d Cir 2015).

Because we agree that the sale of 49.99% of Monster's interest in JobKorea did not constitute a material portion of Monster's assets or operations, we affirm the district court's holding that JobKorea I did not qualify as a Partial Sale Transaction, and thus we decline to consider whether the compensation provision itself was enforceable. In concluding that JobKorea I did not satisfy the materiality threshold, the district court relied upon the fact that: (1) following the consummation of JobKorea I, Monster retained majority control over the subsidiary and thus did not relinquish a material portion of its operations; and (2) Monster's 49.99% stake in JobKorea constituted less than 4% of Monster's total assets at the time of the transaction. *Stone Key*, 333 F. Supp. 3d at 333–34. As to the first issue, while Stone Key advocates for a broader definition of "operations" that accounts for other qualitative factors such as profitability and market response,

6

it fails to ground these arguments in any specific understandings evidenced by the parties' agreement. And to the extent that it attempts to rely upon the material control that H&Q allegedly acquired over JobKorea as a result of the transaction, citing limitations embodied in the purchase agreement between Monster and H&Q, these restrictions ultimately have little bearing on the question of whether the sale involved a material portion of Monster's operations and that of "its subsidiaries taken as a whole," as defined in the Engagement Letter. App. 1391 § 3(c).

For similar reasons, we decline to overturn the district court's holding that the sale of 3.7% of Monster's assets as measured by their book value was not "material," citing the oft-used 5% rubric for "quantitative materiality" in the context of securities fraud case law. *Stone Key*, 333 F. Supp. 3d at 333–34 (internal quotation marks omitted). Stone Key argues in favor of other metrics, such as fair market value, to better approximate the value of Monster's total assets as compared to its 49.99% interest in JobKorea. But without evidence that the parties' expressly contemplated some other method for assessing the value of Monster's assets or their materiality, we will not disturb the district court's findings. Nor do we find compelling Stone Key's argument that the district court's reliance on book value was only proper if the court "compared 100% of the book value of JobKorea's assets . . . to the book value of Monster's total assets," Appellant's Br. 40, when the transaction did not involve the transfer of 100% of Monster's interest in JobKorea.

Finally, Stone Key argues that the district court miscalculated the reimbursement it is owed for out-of-pocket expenses under the agreement by failing to include in its calculation certain expenses that Stone Key incurred before the Engagement Letter was executed. While it appears undisputed that Stone Key began working on the strategic review upon which the Engagement Letter was predicated before its execution, the district court correctly found that the agreement

7

unambiguously limited the entitlement to reimbursement for expenses incurred "in connection with Stone Key's rendering its services under this Agreement."  App. 1395 § 5.  The parties' failure to provide that Stone Key was entitled to reimbursement for expenses that predated the agreement is thus fatal to its claim.  *See, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) ("Under New York law, . . . a court must enforce th[e] plain meaning, rather than rewrite an unambiguous agreement."  (internal quotation marks and alterations omitted)).

We have considered Stone Key's remaining arguments and find them to be without merit. We hereby **AFFIRM** the judgment and accompanying opinion and order of the district court.


FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

8